# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS
# AT WICHITA, KANSAS

DECARLO BELL,

        Plaintiff,

-vs-                                                      Case No.

BEDFORD TRANSPORTATION, LTD, a
foreign limited corporation; BEDFORD INDUSTRIES,
INC., a foreign corporation; and STEPHEN WESLEY
GASKINS, II, an individual,

        Defendants.

## COMPLAINT

Plaintiff, through counsel Bradley A. Pistotnik and J. Corey Sucher of Brad Pistotnik Law, P.A. and for his claims against Defendants, alleges and states:

## COUNT I - GENERAL ALLEGATIONS OF FACTS

1. Plaintiff is a resident and citizen of the State of Kansas and resides in Wichita, Sedgwick County, Kansas.

2. Defendant Bedford Industries, Inc. (hereinafter individually referred to as, "Defendant Bedford Industries") is a foreign corporation incorporated in the State of Minnesota, with its principal place of business located at 1659 Roe Avenue, Worthington, MN 56187-9700 and may be served with service of process through its CEO, Kim A. Milbrandt, at 1659 Roe Avenue, Worthington, MN 56187-9700.  Upon information and belief, Defendant Bedford Industries is a holding company or parent company of Defendant Bedford Transportation, LTD (hereinafter individually referred to as, "Defendant Bedford Transportation")

3. Defendant Bedford Transportation, LTD is a foreign limited corporation with its principal place of business located at 1659 Roe Avenue, Worthington, MN 56187-9700 and may be served through its CEO, Kim A. Milbrandt, at 1659 Roe Avenue, Worthington, MN 56187-9700.  Upon information and belief, the company is a corporation and it is either a C corporation or S corporation.

4. Defendant Stephen Wesley Gaskins, II (hereinafter, "Defendant Driver") is a resident and citizen of the State of Minnesota, driver of a commercial motor vehicle owned and operated by Defendant Bedford Transportation, LTD and/or Defendant Bedford Industries, and Defendant Driver may be served at his residence located at 125 W. 9th Avenue, Worthington, Minnesota 58187.

5. This Court has proper venue and jurisdiction over the persons and subject matter.

6. This action is brought pursuant to 28 U.S.C. Section 1332(a) on the basis of diversity of citizenship. The matter is in excess of the sum of Seventy-Five Thousand and no/100 Dollars ($75,000.00), exclusive of interest and costs.

7. Defendant Bedford Industries and Defendant Bedford Transportation, LTD are hereinafter collectively referred to as "Defendants Bedford" throughout all allegations and Counts of this Complaint.

8. Defendant Driver was operating in the course and scope of his employment with Defendants Bedford at the time and moment of the subject collision, and for all allegations brought herein, the actions and/or omissions of Defendant Driver are the actions and/or omissions of Defendants Bedford under the doctrines of respondeat superior and vicarious liability.

9. Defendant Driver operates the commercial motor vehicle as an employee or, alternatively, under a contract or lease for hire with all other Defendants and all Defendants have an

2

agreement, either express or implied, that Defendant Driver operates the commercial motor vehicle under the DOT authority granted by the DOT to Defendant Bedford Transportation, LTD under US DOT license number 345772. Defendant Bedford Transportation, LTD applied for motor carrier authority through the United States Department of Transportation to operate as a motor carrier under D.O.T. number 345772.

10. Defendant Bedford Transportation, LTD and Defendant Bedford Industries are alter egos of each other and each company exercises such dominion and control over the motor carrier and transportation business of the other that the actions of one alter ego are the actions of the other alter ego, including, but not limited to, carrying out all functions of interstate transportation of cargo and goods, which includes hiring and qualification of drivers, training of drivers, supervising drivers, dispatching loads, monitoring hours-of-service for drivers in interstate and intrastate commercial motor carrier services, and other transportation related management and services. The actions and/or omissions of Defendants Bedford and Defendant Driver as set forth in this Complaint proximately caused damages and injuries to the Plaintiff.

11. Upon information and belief, Defendants Bedford did not train or supervise Defendant Driver through proper training and did not use any defensive driving training manual, nor did they use any formal classroom orientation to teach Defendant Driver hazard perception skills, accident-avoidance skills, and/or defensive driving skills.

12. Upon information and belief, Defendants Bedford put Defendant Driver on an "on-time" delivery protocol that created a financial incentive for Defendant Driver to drive while fatigued in violation of the maximum hours rules of service and created a monetary incentive for him to drive while fatigued because he would be penalized if he did not make his delivery

on-time.

13. A motor carrier search of the DOT and FMCSA website, as well as FOIA requests, were made to the FMCSA that disclosed that Defendants Bedford had ALERTS for "Crash Indicator" at or near the time of the subject collision and in March, April, and May of 2019 Defendants Bedford had safety warnings called, "ALERTS," from the DOT indicating that its Crash Indicator had risen to a level of 78% making the motor carrier have a higher safety violation rate in this category of the CSA BASICS than 77% of other commercial motor carriers in its particular category of transportation. This evidence establishes that Defendants Bedford have a routine business practice, habit, and custom of having a disregard for the FMCSR and the CSA BASICs as well as failing to have a preventability safety board or program to prevent their Crash Indicator from rising to such a high level that the DOT and the FMCSA had to give them multiple "ALERTS" regarding their high violation rate.

14. The DOT enforcement officer from the Kansas Highway Patrol performed a driver/vehicle examination report on February 19, 2020 that found that Defendant Driver and Defendants Bedford were Out-of-Service (OOS) under Kansas local laws and pursuant to 49 CFR § 392.2 for violation of local laws for, "Fail to yield to authorized emergency vehicle." The Plaintiff's dump truck that he was operating was pulling a trailer that was fitted with a large flashing signal with a right arrow to tell drivers who were approaching to move or merge to the right to avoid the slow or stopped vehicles that were trying to clear debris from the interstate highway to make it safe for other drivers to travel on the highway.

15. The Kansas Highway Patrol issued citation number 2020C002650 to Defendant Driver for violating K.S.A. 08-1530(b) for failing to yield additional space to a stationary emergency vehicle that was operated by the Plaintiff. Upon information and belief, Defendant Driver

4

paid the ticket and pled guilty, thereby making an admission against interest.

16. On or about the 19th day of February, 2020, Plaintiff was working on I-135 helping to clear debris from streets and highways along with a street cleaner driving in front of Plaintiff's dump truck emergency vehicle and attached trailer with flashing arrow signals to move vehicles to the right. The street cleaner and Plaintiff (emergency vehicle) were stopped in traffic on the left shoulder on I-135 in Wichita, Sedgwick County, Kansas near the U-54 exit ramp with flashing warning lights on when Defendant Driver, who was acting in the course and scope of employment for Defendants Bedford, negligently, carelessly, and wantonly failed to abide by the emergency vehicle flashing warning arrow signals and Defendant Driver veered to the left partially onto the shoulder, thereby striking the arrow board trailer attached to the emergency vehicle that the Plaintiff was operating and causing major damage to the trailer and truck, as well as pushing that truck forward into the stopped street cleaner vehicle, thereby proximately causing a collision and injuries and damages to Plaintiff.

17. Witness Jim R. Turner is quoted by the investigating State Trooper as stating, "Stopped on shoulder of 135 to pick up trash for sweeping roadway. When semi came down on inside lane and hit arrow board trailer and dump truck pushing into sweeper. Both myself and dump truck driver were out of trucks."

18. Witness Jack D. Shumard is quoted by the investigating State Trooper as stating, "I was northbound on 135 in the centerlane (sic) when I saw a yellow flashing arrow to merge to the right. A semi was behind me as I was merging to the inside lane, he then moved to the far left lane. I couldn't figure out why he wasn't moving over as I had moved so he could. All the sudden without any attempt to avoid the construction or maint. crew he hit them at a speed of 60 mph. I say that because I was behind him at the same pace. He hit the rear vehicle

5

and bounced off and traveled across 4 lanes before coming to a stop on the exit ramp at Kellogg. I had pulled off the roadway by this time and called 911."

19. Defendant Driver is quoted by the investigating State Trooper as stating, "I was traveling north bound on I-135 through Wichita, KS. Was in left hand lane, My ELD beeped. I glanced at it, looked back at the roadway and struck something on the roadside," thereby making an admission against interest.

20. Defendant Driver's commercial motor vehicle was owned and/or operated and/or leased by Defendants Bedford and was dispatched, supervised, maintained, monitored, operated, and controlled by the Department of Operations and the fleet management of Defendants Bedford.

21. Defendant Driver was hired, retained, supervised, and trained by Defendants Bedford.

22. Defendants Bedford and Defendant Driver were operating a fleet of commercial motor vehicles, trucks, and other vehicles as a motor carrier as defined by the Federal Motor Carrier Safety Regulations (FMCSR).

23. That at all times material hereto, Defendants Bedford and Defendant Driver were operating under authority through the Department of Transportation (DOT) under the DOT license number set forth herein above.

24. 49 C.F.R. § 390.3(e)(1) & (2) provide that every driver and employee shall be instructed regarding and shall comply with all applicable regulations contained in the FMCSR.

25. 49 C.F.R. § 390.5 provides that "motor carrier" means a for-hire motor carrier or a private motor carrier. That term includes a motor carrier's agents, officers, and representatives as well as employees responsible for hiring, supervising, training, assigning, or dispatching of drivers.

6

26. 49 C.F.R. § 392.2 provides that every commercial motor vehicle must be operated in accordance with the laws, ordinances, and regulations of the jurisdiction in which it is being operated. However, if a regulation of the Federal Motor Carrier Safety Administration imposes a higher standard of care than that law, ordinance or regulation, the Federal Motor Carrier Safety Administration regulation must be complied with.

27. Defendants Bedford and Defendant Driver were at all material times a "motor carrier" and an "employer" of their driver as defined as defined in 49 C.F.R. §382.107.

28. 49 U.S.C. § 14704(a)(2) provides that "A carrier . . . is liable for damages sustained by a person as a result of an action or omission of that carrier. . . in violation of this part."

29. 49 U.S.C. § 14101(a) provides that "a motor carrier shall provide safe and adequate service, equipment and facilities." Defendants Bedford and Defendant Driver negligently and wantonly failed to provide safe and adequate service which proximately caused the injury and damages to Plaintiff.

30. The FMSCRs are located at 49 C.F.R. § 390 *et seq.* The FMCSRs and the MCA specifically operate under the section 40 C.F.R. § 391.1(a) and (b), which states "(a) The rules in this part establish minimum qualifications for persons who drive commercial motor vehicles, as, for, or on behalf of motor carriers. The rules in this part **also establish minimum duties of motor carriers with respect to the qualification of drivers.** (b) A motor carrier who employs himself/herself as a driver must comply with both the rules in this part that apply to motor carriers and the rules in this part that apply to drivers." The FMCSRs set forth the applicable minimum industry standard of care including the minimum qualifications for drivers and the minimum duties for drivers under 49 C.F.R. § 391.1(a) & (b).

## COUNT II - <u>THE FEDERAL MOTOR CARRIER SAFETY REGULATIONS SET FORTH THE APPLICABLE MINIMUM INDUSTRY STANDARDS OF CARE TO ESTABLISH NEGLIGENCE, LACK OF CARE, RECKLESS, AND WANTON CONDUCT</u>

31. The Plaintiff re-alleges the allegations contained in paragraphs one (1) through thirty (30) above as if though fully set forth herein.

32. The allegations contained in this Complaint regarding the Federal Motor Carrier Safety Regulations (FMCSR) are set forth to establish that the Defendants did not comply with the industry standard of care and the minimum standards of care described under the FMCSR and the interpretive categories under the CSA BASICs to establish the negligence of the Defendants and are not brought to allege a private cause of action for violation of the FMCSR.

33. The actions and/or omissions of Defendants Bedford are the actions and/or omissions of Defendant under the doctrines of respondeat superior and vicarious liability and upon information and belief, are negligent, careless, and wanton and include, but are not limited to:

    A. Following too closely;

    B. Failing to slow down, stop or merge right for an emergency vehicle displaying cautionary right turn arrows and flashing lights;

    C. Failing to maintain a commercial motor vehicle in the right hand lane of travel except when passing;

    D. Driving on the left shoulder of the road or highway;

    E. Speeding too fast for the then existing traffic conditions of a stopped emergency vehicle with directional flashing lights with a right turn arrow which commanded drivers to merge to the right;

F. Inattentive operation of a commercial motor vehicle;

G. Operation of a commercial motor vehicle while using a cellular phone, GPS, PDA, mapping or other message device;

H. Failing to keep a proper lookout;

I. Failing to exercise ordinary and reasonable care;

J. Failing to warn;

K. Operation of a commercial motor vehicle without first ascertaining that movement can be safely made;

L. Violating K.S.A. 08-1530(b) for failing to yield additional space to a stationary emergency vehicle that was operated by the Plaintiff that provided directional flashing lights and a right lane merge arrow;

M. Violating K.S.A. 08-1522 which generally requires that all vehicles drive in the right lane except when overtaking or passing another vehicle or making a proper left turn;

N. Upon information and belief, failing to maintain copies of Defendant Driver's logs and intentionally destroying them or concealing them in an effort to hide violations of the hours-of-service rules and the fatigue of driver.

O. Upon information and belief, failing to comply with the requirements and recommendations of the DOT and FMCSA regarding using the following safety protocols: Failing to perform post-accident investigations; failing to set up and utilize a Safety Review Board; failing to train drivers in defensive driving, hazard perception, and accident awareness techniques;

P. Failing to meet the minimum duties and industry standards of care set forth

under 49 C.F.R. §§ 381 through 399;

Q. Failing to meet the minimum duties and industry standards of care set forth under 49 CFR § 392.2 for violation of local laws for, "Fail to yield to authorized emergency vehicle."

R. Failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 392.3 by operation of a commercial motor vehicle while Defendant Driver's ability or alertness is impaired;

S. Failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 391.11(a) by operation of a commercial motor vehicle when Defendant Driver is not properly qualified pursuant to this regulation;

T. Failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 383.113 by operating a fleet vehicle and commercial motor vehicle when Defendant Driver does not possess and demonstrate the safe driving skills required by this regulation;

U. Failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 383.111 by operating a fleet vehicle and commercial motor vehicle when Defendant Driver did not have sufficient basic knowledge of safe operating regulations, including the effects of fatigue, safety systems knowledge, knowledge of basic control maneuvers, and basic information on hazard perception and/or when and how to make emergency maneuvers;

V. Failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 383.110 by operation of a fleet vehicle and commercial

      motor vehicle without the knowledge and skills necessary to operate the such vehicle safely;

W. Failing to meet the minimum duties and industry standards set forth under 49 C.F.R. § 390.11 by failing to observe and follow the FMCSR;

X. Failing to meet and follow the maximum hours-of-services limits prescribed by law under 49 C.F.R. 395.1 et. seq;

Y. Failing to maintain copies of Defendant Driver's logs in their accurate and complete unaltered manner as required by 49 C.F.R. 395.3 et. seq.;

Z. Failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R § 383.110, 49 C.F.R. § 383.112, 49 C.F.R. 383.113 by failing to have adequate safety management controls in place that would require and provide that Defendant Driver had the required skills and safety management controls required under this regulation;

AA. Upon information and belief, using a cellular phone device, wireless communication device or other PDA device while operating a motor vehicle and talking, texting or looking at GPS directions, thereby violating K.S.A. 8-15,111 and causing the Defendant Driver to be distracted;

BB. For violation of laws, statutes, ordinances and regulations of the State of Kansas and of the City of Wichita;

CC. For other actions and/or omissions that will be supplemented after the receipt of full and complete discovery in this case.

## COUNT III - <u>NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION CLAIMS</u>

34. The Plaintiff re-alleges the allegations contained in paragraphs one (1) through thirty-three

(33) above as if though fully set forth herein.

35. Upon information and belief, all allegations set forth above in prior paragraphs establish that Defendants are negligent, wanton, and reckless as set forth above and for the following actions and/or omissions.

36. Upon information and belief, Defendants Bedford are negligent in their hiring of Defendant Driver for failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 391.11 and 49 C.F.R. § 391.21, 49 C.F.R. § 391.23 by failing to properly qualify Defendant Driver and by failing to make appropriate investigation and/or inquiries of Defendant Driver's background in the prior ten (10) year period and by failing to obtain the federally required information on the application for employment of Defendant Driver with required ten (10) year background checks, criminal history checks, and obtaining actual responses from prior employers;

37. Upon information and belief, Defendants Bedford's training and/or supervision of Defendant Driver is negligent for failing to create and implement any Safety Review Board; for failing to create and train all drivers with defensive driver training, accident avoidance training, and hazard perception and recognition techniques regarding space, cushion, following distance and other safe driving techniques; for failing to adequately evaluate the actual driving time of their driver through log evaluation and dispatch personnel that would be able to accurately monitor and supervise his hours-of-service; for failing to train Defendant Driver on what to do when approaching emergency vehicles and flashing lights and warning signals with arrows to merge right; for failing to utilize log and hours of service monitoring in real time through GPS tracking; for failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 383.111 by failing to properly road test their driver over his

knowledge of following distance, cushion and space management techniques, hazard perception techniques, braking techniques, visual search techniques and fatigue and awareness; and/or for creating, implementing and requiring their driver in this case and their other drivers to have to a protocol that delivery must be made on-time or Defendant Driver will be penalized with a loss of pay, suspension or termination;

38. Upon information and belief, Defendants Bedford negligently retained Defendant Driver by failing to immediately terminate, suspend, and/or reprimand him;

39. Defendants Bedford's CSA BASICs Company Safety Profile indicating that in the time frame of the subject collision and the months immediately thereafter, Defendants Bedford were given "ALERTS" for "Crash Indicator" in March, April and May of 2019 due to their 79% violation rate.

40. Defendants Bedford's actions and/or omissions establish negligent hiring, retention, supervision, and training of Defendant Driver and supervisory managers above Defendant Driver;

41. Defendants Bedford and their respective agents, employees, and/or representatives were careless and negligent and wanton for negligent hiring, training, supervision, and retention of Defendant Driver and his supervisory personnel.  Defendants Bedford willfully, negligently and/or wantonly hired unfit employees and agents and then failed to properly train, supervise, and monitor them and additionally retained employees and agents that were not performing their jobs properly or adequately. This includes, but is not limited to, Defendant Driver and his supervisory personnel. Defendants Bedford have an obligation to use reasonable care in selecting and retaining their employees, agents, and independent contractors, and was negligent in hiring, selection, training, monitoring, and retaining their

employees, agents, and independent contractors, including, but not limited to Defendant Driver.  Defendants Bedford negligently and wantonly failed to use reasonable care in the hiring, selecting, training, monitoring, and retention of their employees and agents, including, but not limited to, Defendant Driver.  Defendants Bedford knew or reasonably should have known that they were not hiring safe and competent employees and agents and negligently and wantonly violated their duty to hire only safe and competent employees.  Defendants Bedford knew or reasonably should have known that their employees and agents, including, but not limited to, Defendant Driver, created and were an undue risk of harm to the Plaintiff, and negligently and wantonly failed to reprimand, retrain, or terminate their employees, agents, and independent contractors, including Defendant Driver and his supervisory personnel, as established by the BASICs safety violations above.

42. Defendants Bedford's hiring, training, monitoring, supervision, and retention of unsafe and incompetent employees, agents, and independent contractors, including Defendant Driver and his supervisory personnel, proximately caused the injuries to the Plaintiff;

43. Defendants Bedford failed to have adequate safety management protocols in place;

44. Defendants Bedford failed to properly create and implement a proper safety program that would require Defendant Driver to be adequately tested in written form to determine that he has appropriate defensive driving skills;

45. Upon information and belief, Defendants Bedford failed to test Defendant Driver for alcohol and/or drug consumption after the subject collision.

### COUNT IV - <u>RATIFICATION IS ESTABLISHED BY EXPRESS OR IMPLIED RATIFICATION</u>

46. The Plaintiff re-alleges the allegations contained in paragraphs one (1) through forty-five

(45) above as if though fully set forth herein.

47. Defendants Bedford have ratified all conduct of Defendant Driver either expressly or impliedly. Upon information and belief, Defendant Driver was not reprimanded, suspended, terminated, or retrained following the subject collision. More importantly, the FMCSR and CSA BASICs violations set forth above clearly establish that Defendants Bedford expressly disregarded the FMCSR, the CSA BASICs, and the industry standards of care for safety in the trucking industry or impliedly turned a blind eye to safety.

48. Hiring or employing a professional truck driver that does not understand what a flashing sign with a right lane merge arrow provides clear and convincing evidence of inadequate training and supervision and allowing an untrained driver to drive across the nation's roads and highways is disregarding public safety which impliedly establishes ratification.

## COUNT V – **PUNITIVE DAMAGE CLAIMS**

49. The Plaintiff re-alleges the allegations contained in paragraphs one (1) through forty-eight (48) above as if though fully set forth herein.

50. The nature of the actions and/or omissions of Defendant Driver by failing to move and merge right when approaching a stopped emergency vehicle displaying a large flashing right turn arrow are wanton, grossly negligent, and recklessly indifferent to human life.

51. The other allegations of the wanton conduct of the Defendants in failing to abide by the FMCSR, the CSA BASICS, and all allegations stated above, provide clear and convincing evidence of wanton conduct.

52. For the aforementioned damages, the Plaintiff has been damaged in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

## COUNT VI – <u>PLAINTIFF'S ACTUAL AND COMPENSATORY DAMAGES</u>

53. The Plaintiff re-alleges the allegations contained in paragraphs one (1) through fifty-two (52) above as if though fully set forth herein.

54. At the time of the subject collision, Plaintiff was standing immediately adjacent to the dump truck and was returning to the cab of his dump truck after placing road debris in the back of the truck, which required him to walk along the retaining wall. After the subject collision, he was knocked over the side and fell to the ground falling approximately twenty (20) feet to the ground where he landed on his arms, head, and body and was knocked unconscious until awoken by EMS workers cutting his clothes off of him.

55. As a further direct and proximate result of the negligent, careless, and wanton actions and omissions of the Defendants, as aforesaid, Plaintiff has received injuries to his body, including, but not limited to: cervical, thoracic, and lumbar spine, including cervical radiculopathy; injuries to both wrists requiring surgery; closed head injury/TBI; radicular radiating pain and numbness in the low back down the back of one or both legs; Plaintiff has undergone multiple epidurals and other types of spinal injections; has undergone a fusion of the SI joint; has underwent physical therapy and pain management; and may have had aggravation to a pre-existing condition, and was otherwise injured. Plaintiff has been damaged with pain and suffering, mental anguish, loss of time, loss of enjoyment of life, medical expenses, economic loss, permanent disfigurement, and permanent disability. In the future, the Plaintiff will suffer with pain and suffering, mental anguish, loss of time, loss of enjoyment of life, medical expenses, economic loss, permanent disfigurement, and permanent disability. For the aforementioned damages, Plaintiff has been damaged in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

56. Plaintiff additionally brings claims for the loss of consortium suffered by his wife.

Plaintiffs prays for judgment against Defendants for all damages allowed under Kansas law as actual compensatory damages in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00); for all damages allowed under Kansas law as punitive damages in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00); for costs herein, for interest where allowed and for such other and further relief as the Court deems just and equitable.

Respectfully Submitted,

*/s/Bradley A. Pistotnik*
Bradley A Pistotnik, #10626
J. Corey Sucher, #27789
10111 E. 21st Street, Suite 204
Wichita, Kansas 67206
Ph: 316-684-4400 / Fax: 316-684-4405
brad@bradpistotniklaw.com
corey@bradpistotniklaw.com
*Attorneys for Plaintiff*

## DEMAND FOR PRETRIAL CONFERENCE AND JURY TRIAL

Plaintiff demands a pretrial conference and a trial by jury in this matter.

## DESIGNATION FOR PLACE OF TRIAL

Plaintiff and designates Wichita, Kansas as the place for trial in this matter.

*/s/Bradley A. Pistotnik*
Bradley A Pistotnik, #10626